THE PEOPLE OF THE STATE OF NEW YORK ex rel. ADAMS ELECTRIC LIGHT COMPANY, Petitioner, v. MARK GRAVES and Others, Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, April 29, 1936.

Cullen, Norris & Reynolds [Francis E. Cullen of counsel], for the petitioner.

John J. Bennett, Jr., Attorney-General [Wendell P. Brown, Assistant Attorney-General, of counsel], for the respondents.

HILL, P. J. The petitioner is a corporation engaged in the business of selling and distributing electricity and is subject to a franchise tax as provided by section 186 of the Tax Law (as amd. by Laws of 1933, chap. 461), and particularly that part which requires it to pay " three per centum upon the amount of dividends declared or paid in excess of four per centum upon the actual amount of paid-up capital employed in this State." Prior to May 16, 1933, the capital of this corporation was $49,915.83. There were 2,316 shares of no par value, each representing $21.55 of paid-in capital. Its surplus at that time was $101,051.70. On that date, by resolution of the board of directors, $90,084.17 of the surplus was transferred to the capital account. This transfer has been determined by the Tax Commission to be a dividend for the purpose of fixing the amount of the tax under the above-quoted portion of the law. We are reviewing that determination.

After the transfer, each of the shares of stock represented $60.45 of paid-in capital. " For the purpose of any rule of law or of any statutory provision relating to the amount of the capital stock of a corporation, the capital of any corporation authorized to issue shares without par value shall be deemed to be the capital stock of such corporation." (Stock Corp. Law, § 13.) Therefore, by the transfer, the capital stock in the hands of the stockholders of the corporation was increased $90,084.17. Thereafter if the stockholders still desired to have shares of stock that represented only $21.55 each of paid-in capital, they had only to file a certificate and issue 4,180 (plus a fraction) additional shares (Stock Corp. Law, §§ 36, 37, 38) and each of the 6,496 shares would represent $21.55 of paid-in capital.

True this transfer did not increase the wealth of the stockholders for they owned a contingent interest in the surplus of the corporation as well as its capital. Nevertheless the resolution of the board of directors changed the stockholders' contingent and

separately untransferable ownership and interest in the corporate surplus into salable and exchangeable capital stock in the corporation. (*Rockefeller* v. *United States*, 257 U. S. 176, 183.) A dividend payable in stock issued against an earned surplus that had been transferred to the capital account is taxable. " Stock, scrip and bond dividends, so called, have frequently been declared and have been before the court for consideration, and I think the general understanding in commercial affairs and with the courts is that they represent a benefit to the stockholders and a distribution of profits. * * * If such distribution represents surplus earnings it may fairly be treated as a dividend and as the income from the original stock." (*People ex rel. Pullman Co.* v. *Glynn*, 130 App. Div. 332, 333; affd. on opinion below, 198 N. Y. 605.) To the same effect: *People ex rel. Wedgewood R. Co.* v. *Lynch* (262 N. Y. 202); *People ex rel. Eastern Building Corp.* v. *Lynch* (245 App. Div. 787). This transaction lacks only an increase in the number of shares, which may be effected as earlier mentioned, to correspond completely with a stock dividend. Even though the stockholders were not enriched, the change from a contingent interest in the corporate surplus to a transferable share of the capital was in effect a dividend and taxable. (*Eisner* v. *Macomber*, 252 U. S. 189; *People ex rel. Fox Film Corp.* v. *Loughman*, 259 N. Y. 30.)

The determination of the State Tax Commission should be confirmed.

CRAPSER and BLISS, JJ., concur; RHODES, J., dissents, with an opinion, in which HEFFERNAN, J., concurs.

RHODES, J. (dissenting). The question presented is whether the transfer of a portion of petitioner's earned surplus to its non-par value capital stock account, pursuant to a resolution of its board of directors, was in effect the declaration and distribution of a dividend within the meaning of that term as used in section 186 of the Tax Law.

Petitioner is a domestic electric corporation organized in 1912. Its capital stock consists of 2,316 shares without par value. Prior to May, 1933, the sum of $49,915.83, or $21.55 per share, had been paid into the treasury of the corporation on those shares. Its surplus at that time was $101,051.70. On the 16th day of May, 1933, the board of directors adopted a resolution directing the transfer from said surplus account to the non-par value capital stock account of $90,084.17, thereby increasing that account to $140,000. The amount so transferred represented undistributed earnings of the corporation and such transfer increased the amount standing in the capital stock account to $60.45 per share.

The Commission claims that this transfer from the surplus account to the non-par value capital stock account constituted in effect the declaration and distribution of a stock dividend taxable under section 186 of the Tax Law. That section (as amd. by Laws of 1933, chap. 461), so far as material here, is as follows: " Every corporation * * * shall pay for the privilege of exercising its corporate franchises or carrying on its business in such corporate or organized capacity in this State, an annual tax which shall be five-tenths of one per centum upon its gross earnings from all sources within this State, and three per centum upon the amount of dividends declared or paid in excess of four per centum upon the actual amount of paid-up capital employed in this State by such corporations."

No question is raised respecting the portion of the tax assessment measured by gross earnings.

It is argued in behalf of the Commission that the transfer in question inured to the benefit of the holders of non-par value stock by increasing the value of such stock, and that this increase should be taxable as a dividend declared and paid. However, the analogy to a dividend does not hold. When a stock dividend is declared the additional stock thus issued and distributed may be sold and transferred separate and apart from the shares of stock previously issued. As to the non-par value stock, no additional shares were issued to the stockholder. He retained his former proportionate and contingent interest in the assets of the corporation subject to its liabilities. Whether a portion of those assets is in the surplus account or in the non-par value capital stock account can make no difference in the value of each share of non-par value stock, which is based upon and measured by the net assets of the corporation.

When shares of stock having a par value are issued, the statute requires that the corporation shall receive either in money, property or labor the equivalent of the par value of such shares (Stock Corp. Law, § 69), and when non-par value certificates of stock are to be issued, the certificate of incorporation must contain the statement required by section 12 of the Stock Corporation Law, from which statement may be ascertained the amount required to be paid for each such share of stock, and such certificates may not, under the prohibition of said section 69, be issued for less than such stated amount.

Apparently there is no provision of law which requires a corporation to issue its par value shares of stock in exchange for a price higher than par or its non-par value shares for a price above the value specified in its certificate of incorporation, even though

such corporation may have sufficient assets so that its stock is worth much more per share, although of course it is hardly to be expected that shares of stock would be issued for substantially less than their value.

Assuming, however, that shares of par value stock having a greater actual value than par are issued for par value, and that non-par value stock, although worth more, is issued for the price fixed by its certificate of incorporation, such new stock, when issued, would certainly share equally with previously issued shares of the same class in the distribution of its earnings and assets. No corporation is permitted to declare or pay any dividend which shall impair its capital or capital stock (Stock Corp. Law, § 58), and one of the reasons for the requirement that shares of stock must have a par value or a stated value in case of non-par value stock is that it may thus be determined whether the capital or capital stock of a corporation has been impaired. This requisite statement, however, does not necessarily reflect the actual value of the share of stock which, with the vicissitudes of business, may become worth much less or much more. In any event the right of the holder of each share remains a proportionate and contingent interest in the net assets of the corporation.

Where, therefore, have the holders of non-par value shares of stock acquired any additional property rights of any consequence by the transaction in question here?

In behalf of the Commission it is asserted that by this transaction the corporation has reduced its surplus and increased the amount paid in on each share of non-par value capital stock; that such payment in effect came from the shareholders after it was passed to them by the transaction in question, but, as already stated, such is not a correct interpretation of what happened. It is asserted that the corporate surplus has been reduced by a method which avoids taxation. This may be granted, but if such a transaction is permissible without taxation, then the corporation is not subject to criticism for doing what it lawfully may do. It may be assumed that the Legislature has power to impose a tax upon transactions such as this, but the statute fails to do so, probably for the reason that such a situation was not brought to the attention of the Legislature when the statute was enacted. If the taxation of such a transfer is desirable or if it is desirable to measure a franchise tax by such a transfer, the statute can easily be changed to cover the situation.

The tax in the sum of $2,781.59, being the amount measured by the alleged dividend, should be vacated, the determination in this respect annulled and the matter remitted to the State Tax Commission for such further proceedings as may be necessary in accordance herewith, with fifty dollars costs and disbursements to the petitioner.

HEFFERNAN, J., concurs.

Determination confirmed, with fifty dollars costs and disbursements.